IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

Jennifer Jones, on behalf of herself and all )
others similarly situated, )
)
        Plaintiff, )
)
    v. )   Case No.4:08-cv-00490-NKL
)
NovaStar Financial, Inc.; Scott F. )
Hartman; Gregory S. Metz; Rodney )
Swatkin; The NovaStar Retirement )
Committee; and John Does 1-10, )
)
        Defendants. )

## ORDER

Plaintiff Jennifer Jones ("Jones") brings this putative class action pursuant to the

Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against

various alleged fiduciaries of the NovaStar Financial, Inc. 401(k) Plan ("Plan"). She

claims that the fiduciaries breached duties to the Plan and its participants. Before the

Court is Jones's Motion for Class Certification [Doc. # 38]. For the following reasons,

the Court grants the motion.

## I.    Factual Background

Jones sues under §§ 409 and 502(a)(2) and (3) of ERISA.[1]  She seeks to recover losses to the Plan and other equitable relief on behalf of the Plan and its participants. Defendants are NovaStar Financial, Inc., Scott F. Hartman, Gregory S. Metz, Rodney Swatkin, The NovaStar Retirement Committee, and John Does 1-10 (collectively, "Defendants").

Jones alleges that the events underlying this case occurred primarily between May 4, 2006 and November 15, 2007 (the "Class Period").  According to the Complaint, the

---

[1]  Section 502(a)(2) provides for representative suits on behalf of a plan to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans. *LaRue v. DeWolff, Boberg & Assoc.*, 128 S. Ct. 1020, 1023 (2008); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985).  Section 409 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act.

29 U.S.C. § 1109(a). Section 502(a)(3) allows individuals to sue for equitable relief, permitting suits "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Jones's Complaint does not specify what relief she seeks under § 502(a)(2) as opposed to  § 502(a)(3), and the parties do not discuss the claims separately.  However, in her Complaint and briefing, Jones clarifies that the only relief she seeks is on behalf of the Plan, and indicates that the only equitable relief she seeks under § 502(a)(3) is that which is necessary to facilitate distribution of recovery obtained by the Plan.  *See, e.g.,* Doc. # 39 (Jones's Sugg. Supp. Mot. Cert.) at 1-2 (referencing the representative nature of her claims), 3 ("If this action is successful, the entire recovery will flow to the Plan and will be held, allocated and ultimately distributed to the Plan's participants and beneficiaries on a Plan-wide basis"), 9 (identifying the key issue of whether the Plan sustained damage), 10 (noting that ERISA allows for Plan-wide relief); Doc. # 52 (Reply Supp. Mot. Cert.) at 1 (referencing the representative nature of claims), 9 (stating that class certification focuses on claims brought on behalf of the Plan), 14 (emphasizing that the remedies Jones seeks are Plan-wide); Doc. # 1 (Compl.) (seeking "appropriate" equitable relief).

Plan covered substantially all of the employees of NovaStar Financial, Inc., and its subsidiaries (collectively, "NovaStar"). Individual accounts were maintained for each Plan participant, and each participant could elect between various investment options. One of the investment options in the Plan was the NovaStar Financial, Inc., Unitized Common Stock Fund, which held NovaStar common stock. Jones alleges that Defendants were Plan fiduciaries.

In general, Jones claims that Defendants failed to: act solely in the interest of participants and beneficiaries of the Plan; and to exercise the necessary skill, care, prudence, and diligence in administering the Plan and the Plan's assets. More specifically, Jones states that Defendants allowed the investment of the Plan's assets in NovaStar common stock although they knew, or should have known, that such an investment was imprudent. Jones maintains that the investment was imprudent because of NovaStar's serious mismanagement and improper business practices, including:

> (i) relying on originating, purchasing, securitizing, selling, investing in and servicing subprime residential mortgages for revenue; (ii) manipulation of its mortgage origination process; (iii) failing to abide by its stated mortgage underwriting process and criteria; (iv) failing to implement, maintain and/or abide by proper risk management processes; (v) improper financial accounting for, among other matters, its portfolio of mortgages; and (vi) engaging in practices that endangered and ultimately eliminated its ability to elect to be taxed as a real estate investment trust or REIT, all of which caused its financial statements to be misleading and which artificially inflated the value of shares of NovaStar common stock . . . .

Doc. # 1, (Compl.) at ¶ 5. Jones alleges that Defendants failed to investigate whether NovaStar common stock was a prudent investment, and that they also failed to investigate the performance of other Plan fiduciaries.

Jones states that Defendants knew about NovaStar's problems but did not disclose them to Plan participants. According to the Complaint, Defendants issued misleading communications to Plan participants regarding investment in NovaStar common stock, including SEC filings, annual reports, press releases, and Plan documents. Jones says that, as a result, Plan participants could not make informed decisions about their investments; also as a result, the price of NovaStar common stock was artificially inflated.

Jones was one of the Plan participants who held NovaStar common stock in her individual Plan account. Jones's employment with NovaStar ended on May 5, 2006, one day into the Class Period. She cashed out of her account and withdrew the full value of her account on approximately June 28, 2006, less than two months into the Class Period.

Jones states that, following the revelation of various truths regarding NovaStar's mismanagement and improper business practices, the price of NovaStar common stock collapsed. Thousands of Plan participants lost a substantial portion of their retirement savings. At the beginning of the Class Period, NovaStar common stock was valued at approximately $36.41 per share. When Jones cashed out, NovaStar common stock was

4

valued at approximately $31.61 per share. At the close of the Class Period, NovaStar common stock was valued at approximately $1.72.

The parties appear to agree that NovaStar common stock was closed to Plan participant purchases during the portion of the Class Period in which Jones was a participant; therefore, Jones did not purchase NovaStar common stock for her account during the Class Period. However, Plan participants were allowed to make new investments in NovaStar common stock following Jones's cash-out during the Class Period, from November 30, 2006 until November 15, 2007.

The Complaint includes four counts. Count I alleges liability under ERISA §§ 502(a)(2) and(3) for breach of the fiduciary duties of loyalty, exclusive purpose, and prudence against Defendants because they allowed Plan participants to invest in NovaStar common stock. Count II, derivative of Count I, alleges liability under the same sections against NovaStar and the Defendants who were chairs of the Retirement Committee for their failure to fulfill their obligations as monitoring fiduciaries. Count III alleges liability under § 502(a)(2) for breach of the fiduciary duty of loyalty against Defendants based on their misleading communications. Count IV alleges co-fiduciary liability under §§ 502(a)(2) and (3) for knowing about, participating in, and enabling co-fiduciaries' improprieties.

The Prayer for Relief requests: a declaration that Defendants are not entitled to the protection of ERISA § 404(c)(1)(B) (regarding participants' control of their

5

accounts); an order compelling Defendants to make good to the Plan losses resulting from the alleged breaches; an order requiring Defendants to appoint independent fiduciaries to manage the Plan's investments concerning NovaStar common stock; actual damages to be allocated among participants' individual accounts; fees and costs; and equitable restitution. Jones brings her claims in a representative capacity on behalf of the Plan and its participants under ERISA. The Court denied Defendants' motion to dismiss by Order dated February 11, 2009 [Doc. # 43].

Defendants took Jones's deposition. At her deposition, she indicated a general awareness that the case concerns Defendants' mishandling of the Plan with regard to the NovaStar common stock. Jones stated that she reviewed the Complaint, is aware of the status of the case and received a copy of the motion to dismiss and knows that settlement negotiations have occurred. Jones knows who the Defendants are, and she believes that recovery will be on behalf of herself and the class. Jones could not recall whether she had reviewed documents discussing NovaStar business practices or its SEC filings. Also, Jones's testimony did not indicate that she has substantive knowledge with regard to her claims or fully understands the role of a class representative in detail. Jones now moves for class certification under Rule 23 of the Federal Rules of Civil Procedure. She requests an Order certifying the following proposed class under Rule 23(b)(1) or, alternatively, Rules 23(b)(2) or (b)(3):

6

All persons, other than Defendants, who were Participants in or beneficiaries of the NovaStar Financial, Inc. 401(k) (the "Plan") at any time between May 4, 2006 and November 15, 2007, inclusive, and whose accounts included investments in NovaStar common stock.

[Doc. # 38 at 1.] According to Jones, this proposed class would include over one thousand NovaStar employees, retirees (and, presumably, other former employees). Jones also seeks an Order: appointing her as class representative; appointing Dysart Taylor Lay Cotter & McMonigle, P.C., as local counsel; and appointing Gainey & McKenna and Stull, Stull & Brody as class counsel.

## I.    Discussion

In order to be certified as a class action, Jones's claims must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. The proposed class must meet the criteria set out in Rule 23(a), commonly referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Further, Jones's action must be maintainable as a class action under at least one of the three subsections of Rule 23(b). *See, e.g., In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005).

In considering whether class certification is appropriate, the Court does not address the merits of the parties' claims and defenses, but does probe behind the pleadings and look to what the parties must prove. *General Tel. Co. v. Falcon*, 457 U.S. 147, 160-61 (1982); *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006). "In conducting this preliminary inquiry, however, the Court must look only so far as to

determine whether, given the factual setting of the case, if the plaintiff[']s general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). Jones bears the burden of demonstrating that the proposed class meets Rule 23 requirements. *See, e.g., Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). However, on a motion for class certification in an ERISA breach of fiduciary duty case, "the appropriate focus . . . is the conduct of the defendants, not the plaintiffs." *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000).

### A. Rule 23(a)

#### 1. Numerosity

Defendants do not dispute Jones's argument that the proposed class is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). The proposed class numbers over one thousand persons. Jones has satisfied Rule 23(a)(1).

#### 2. Commonality

Defendants do not dispute Jones's argument that "questions of law or fact [are] common to the class." *See* Fed. R. Civ. P. 23(a)(2).[2] The commonality requirement does not require commonality on every single question raised by a class action. *DeBoer v.*

---

[2] Some of Defendants' arguments concerning typicality overlap with issues relevant to commonality, but will be addressed as Defendants have classified them, in the discussion of typicality, *infra*.

Case 4:08-cv-00490-NKL   Document 60   Filed 04/06/09   Page 8 of 29

*Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir.1995). The Complaint identifies several common issues of law and fact, including: whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result. Jones has satisfied Rule 23(a)(2).

### 3. Typicality

However, Defendants do dispute Jones's argument that her claims are typical of the claims of the class. Generally, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

When finding a class representative's claims typical, it is not necessary to first find that all putative class members share identical claims. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (finding that the putative class representative's ERISA § 502(a)(2) breach of fiduciary duty claims were typical even though he was not an employee for the entire class period and individual damage calculations would vary). *See, e.g., DeBoer*, 64 F.3d at 1174 (ruling that plaintiffs in a case concerning a bank "overescrowing" accounts satisfied the typicality requirement even though they carried different mortgage instruments; indicating that the important inquiry surrounded mortgage servicer's actions). Particularly, in ERISA claims where plaintiffs seek recovery for injuries to a plan rather than to themselves individually, class

representatives' claims need not be identical to those of other individual class members. *See, e.g., In re Syncor Erisa Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005) (finding typicality in an ERISA breach of fiduciary duty suit because "Each of the plaintiffs was a Syncor employee and participated in the Plan during the class period."); *Hans v. Tharaldson*, — F.3d —, No. 3:05-CV-115, 2009 WL 537536, at *3 (D.N.D. March 4, 2009) (finding that former plan participants had standing to sue under ERISA §§ 502(a)(2) and (3) where they alleged that they would have received greater distributions absent fiduciary misconduct). The typicality "requirement is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal procedure or remedial theory." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

Still, "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999). Though ERISA class representatives may have unique situations which make them more or less likely to prevail when faced with various defenses, such uniqueness does not necessarily render their claims atypical. *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007) (citation omitted). The "key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims." *See, e.g., id.* (finding that proposed class representatives' ERISA § 502(a)(2) claims were typical despite their

10

continued trading in company stock after adverse disclosures, where they alleged that "they suffered harm as Participants who lost money on [company] stock investments through the [Defendants'] imprudent Plan management"). Defendants argue that Jones's claims do not meet Rule 23's typicality requirement in that they are subject to unique defenses regarding (1) injury and standing, (2) her early cash out, and (3) reliance.

### a. Standing/Injury

Defendants argue that Jones's claims are subject to particularized defenses concerning her standing.[3] As in any case, representative plaintiffs in class actions must have standing to seek their requested relief and, to establish standing, must have suffered injury. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("that a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (internal quotation marks and citation omitted). To proceed as class representatives, plaintiffs must allege injury that

---

[3] More specifically, as they did on their motion to dismiss, Defendants argue that Jones's claims lack both Constitutional and ERISA statutory standing. Defendants state that Jones did not buy shares at a time when she claims stock prices were artificially inflated. They emphasize that she cashed out of the Plan at a time when she claims that stock prices were artificially inflated as a result of Defendants' alleged fiduciary improprieties. Defendants argue that the evidence will show that, had they disclosed their alleged breaches of duty as Jones contends they should have, Jones would have suffered a far greater loss than she alleges. Thus, Defendants argue that Jones actually benefitted from the improprieties she alleges.

is typical of the injuries of other class members. *See General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (stating that class representatives must possess the same interests and suffer the same injuries as other class members).

There is evidence that Jones suffered the requisite injury. Her NovaStar common stock was worth approximately $36.41 at the start of the Class Period; her stock was worth approximately $31.61 when she sold it. Jones pleads that this drop in stock price was due to Defendants' misconduct. On Defendants' motion to dismiss, the Court found that Jones has adequately alleged and shown the requisite injury for purposes of establishing standing, which she will eventually need to prove in order to prevail on her claims. *See generally Loomis v. Exelon Corp.*, No. 06 C 4900, 2008 WL 2981951 (N.D. Ill. June 26, 2007) (finding, for purposes of class certification motion, that former plan participants had standing to sue under ERISA §§ 502(a)(2) and (3) where they claimed they "cashed out of the plan at a smaller benefit than they were due") (internal punctuation omitted) (quoting *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999)).

Defendants argue that issues surrounding whether Jones suffered an injury will "linger over this case" in a manner which prejudices other class members. Defendants speculate that Jones may have actually profited from their alleged misconduct; however, there is no evidence of profit at this stage of litigation – only evidence of loss. Of course, Jones and the class will have to prove injury to the Plan as the case proceeds, and, as part

12

of that analysis, the parties may elect to examine the losses of individual Plan participants including Jones. However, the need to calculate the amount of loss – including that relevant to Jones's standing – does not overwhelm the key issues in this case concerning whether Defendants breached their duties to the Plan.[4]

### b. Early Cash Out

Defendants also attempt to show that the claims Jones brings on behalf of the Plan are atypical in that (1) she did not hold her NovaStar common stock as long as other class members, and (2) unlike other class members, she did not purchase NovaStar common stock during the Class Period. While recognizing that no court has drawn such a distinction, Defendants attempt to split Jones's fiduciary duty claims into two separate categories: claims that Defendants violated their fiduciary duties by allowing class members to *hold* NovaStar common stock, and claims that Defendants violated those duties by allowing class members to *purchase* NovaStar common stock.

As to Jones's "holder" claims, Defendants argue that Jones's claims are atypical because she cashed out earlier than other class members. Defendants emphasize that Jones sold only weeks into the Class Period; they state that it may be more difficult to

---

[4] Without citation, Defendants argue that Jones does not have standing to seek the requested injunctive relief because she is no longer invested in the Plan. To the extent that Jones would benefit from injunctive relief enforcing recovery obtained by the Plan, she has standing to seek such relief. *See generally Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (indicating that a health plan participant would not have standing to seek injunctive relief unless, among other things, she would benefit from such relief).

prove that breaches occurred within those weeks – when the stock price was still relatively strong – than later – when it collapsed. Defendants state that Jones has an interest in proving that Defendants' actions became improper on a date earlier than would other class members, to their detriment. In *DiFelice v. U.S. Airways*, 235 F.R.D. 70 (E.D. Va. 2006), the court rejected a similar argument:

> While it may be true that each Plan participant who invested in the Company Stock Fund has an 'optimal prudence date,' . . . . it is also true that the Plan has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf of the Plan[. I]ndividual participants' 'optimal imprudence dates' are irrelevant. To the extent members of the class, including the class representative, have interests with respect to this date that are slightly divergent with each other, or with the Plan itself, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.

*Id.* at 79 (quoted with approval in *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 210 (W.D. Mo. 2006)). *See also In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613 (E.D. Tex. 2006) (finding that relevant optimal breach date for § 502(a)(2) action was that of the Plan, as opposed to that of the individual class members). Though Jones was able to minimize her injury by cashing out early, the nature of her claims – that Defendant's alleged misconduct caused losses to the Plan – is typical of the claims of other class members. *See Langbecker*, 476 F.3d at 314 (finding that a putative class representative's continuing to trade in stock after alleged misrepresentations did not render his ERISA § 502(a)(2) claims atypical: "A trading strategy adopted for [the class representative's] personal benefit is, however, distinguishable from the Plan fiduciaries' execution of their

14

duties."); *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995) (rejecting the argument that the typicality requirement demands that class members must have suffered equally from alleged breaches of fiduciary duty).

As to Jones's "purchaser" claims, Defendants argue that her claims are not typical in that she herself did not purchase any NovaStar common stock during the Class Period. Citing to a Congressional policy of protecting fiduciaries from liability for allowing beneficiaries to hold company stock, *see In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 828 (N.D. Cal. 2005), Defendants argue that it may be easier to prove claims concerning "purchaser" claims than "holder" claims. Defendants reach the conclusion that Jones has no incentive to pursue ERISA purchaser claims, although Defendants themselves argue that such claims would be easier to prove.

Because her assets will be affected, Jones has an incentive to maximize the recovery of the Plan, regardless of whether that recovery flows directly from her personal injury. The claims of both Jones and the class members center on issues surrounding Defendants' liability, such as: whether Defendants were fiduciaries to the Plan; whether NovaStar common stock was an imprudent investment; whether Defendants properly communicated with the Plan and its participants regarding NovaStar common stock; whether Defendants took appropriate steps to monitor or investigate the offering or holding of NovaStar common stock; whether Defendants took adequate steps to protect the Plan; whether the Plan and its participants were injured by Defendants' alleged

15

breaches; and whether the class is entitled to relief. Though other class members – who Defendants seem to argue lost considerably more money than did Jones – may have suffered a greater dollar loss, their claims are united with Jones's in that they seek retribution for harm caused by Defendants to the Plan. *See In re ADC Telecoms ERISA Litig.*, No. Civ. 03-2989ADMFLN, 2005 WL 2250782, at *3 (D. Minn. Sept. 15, 2005) (certifying a class in an ERISA § 502 fiduciary duty case including communications claims, noting that courts could never certify class actions concerning securities if plaintiffs were forced to prove at class certification that they purchased the same amount of stock at the same time for the same reasons). Defendants point to no statute or court recognizing a distinction between holder and purchaser claims, and any distinction is outweighed by the common elements of proof and questions of liability concerning both.[5]

Defendants argue that the recent decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S. Ct. 1020 (2008), undercuts Jones's assertion that her claims are typical of other class members because *LaRue* allows plan participants to sue for recovery to individual accounts, regardless of whether other plan participants suffered losses. Another court recently aptly considered the application of *LaRue* to a motion to certify:

> . . . Defendants suggest that the Supreme Court's recent decision in *LaRue* . . . has changed the landscape of ERISA claims in a manner pertinent to the class

---

[5] Defendants did not argue for modification of the proposed class description, or that subclasses (such as "holder" and "purchaser" subclasses) might be appropriate.

16

certification inquiry. *LaRue* dealt with an individual suit brought by a participant in a 401(k) plan. The plaintiff alleged that his employer failed to follow his directions for making changes to investments in his individual plan account, resulting in losses. *Id.* at 1021-22. The Supreme Court held that an individual participant's claim was cognizable under ERISA § 502(a)(2), authorizing suits to enforce fiduciary obligations. *Id.* at 1026.

Defendants urge that *LaRue* brought into question the propriety of class certification in § 502(a)(2) cases. Under their analysis, a class action alleging a breach of fiduciary duty cannot be sustained in the individual plan context because the loss caused to each account would be specific to that person's investment strategy. Defendants' argument reads too much into the *LaRue* analysis. Before *LaRue*, recovery under ERISA § 502(a)(2) was recognized to be on behalf of a plan – individuals could not recover for their own losses. *See* [*Massachusetts Mut. Life Ins. Co. v.*] *Russell*, 473 U.S. 134 [(1985)]. *LaRue* did not overrule that widely-accepted tenet of ERISA law. . . . *LaRue* simply expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account. *Id.* at 1025-26; *see also Bendaoud v. Hodgson*, 578 F. Supp. 2d 257 . . . (D. Mass. 2008) ("Of course, a fiduciary's breaches can affect more than one defined contribution plan participant. In that situation, though, the proper approach is joinder of the affected participants or the certification of a class.").

. . . . "If the Plaintiffs recover any damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed." *Ronald C. Tussey, et al. v. ABB, Inc., et al.*, No. 06-04305-CV, . . . 2007 WL 4289694, *5 (W.D. Mo. Dec. 3, 2007). Here, the common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees, whether they made imprudent investment decisions, and whether they concealed information from all Plan participants. Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets that make up the [plan].

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108-09 (N.D. Cal. 2008). The Court agrees:

*LaRue* does not eliminate the possibility of § 502(a)(2) class actions.

### (1) Reliance

17

Finally, Defendants argue that Jones's claims concerning their failure to disclose relevant information are atypical because she cannot establish reliance on the alleged misrepresentations. Defendants cite to Jones's deposition testimony, which indicates that she may not have relied on all of Defendants' alleged misstatements in determining how to invest her individual account funds.

The question of whether plaintiffs must individually show reliance on § 502(a)(2) communications claims – and, thus, whether class treatment is appropriate – has not been settled by courts. *See, e.g., In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2009 WL 331426, at *5 (D.N.J. Feb. 10, 2009) (noting the lack of controlling authority; finding individual reliance a necessary element preventing class certification on § 502(a)(2) stock drop communications claims); *Spano v. Boeing Co.*, No. 06-CV-0743, 2008 WL 4449516, at *6 (S.D. Ill. Sept. 29, 2008) (rejecting the argument that § 502(a)(2) claims were atypical because of the need to prove individual reliance; noting that the Seventh Circuit has listed only three elements in a case concerning an ERISA communications claim: (1) defendants are plan fiduciaries; (2) defendants breached their duty; and (3) the breached harmed the plaintiff) (citing *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005)). The Eighth Circuit has been silent on the issue. *In re Aquila ERISA Litig.*, 237 F.R.D. at 208.

Case 4:08-cv-00490-NKL   Document 60   Filed 04/06/09   Page 18 of 29

Because ERISA § 502(a)(2) focuses on plans, rather than individuals, the Court finds persuasive those cases which have held that plaintiffs need not establish individual reliance in order to prevail. As one court explained:

> ERISA § 502(a)(2) provides than an action may be brought by a retirement plan participant or beneficiary for relief "under section 1109 of this title." In turn, ERISA § 409 imposes personal liability on plan fiduciaries who breach their fiduciary duties "to make good to such plan any losses to the plan resulting from each such breach." Thus, an action brought by a plan participant under ERISA § 502(a)(2) is brought in a representative capacity on behalf of the plan and solely for relief to the plan as a whole. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-142, 105 S. Ct. 3085, 87 L.Ed.2d 96 (1985). Thus, even assuming that detrimental reliance must be proved, the relevant detrimental reliance is that of the Plan, not the individual Plan participants.

*In re Aquila ERISA Litig.*, 237 F.R.D. at 208 (noting that a multitude of courts have certified § 502(a)(2) classes) (citing, *inter alia*, *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416 (N.D. Okla. 2005) (certifying a § 502(a)(2) communications claim); *In re Reliant Energy ERISA Litig.*, No. 20-2051, 2005 WL 2000707 (S. D. Tex. Aug. 18, 2005) (same, rejecting the argument that a proposed class representative's claims were atypical because he did not read, and therefore did not rely on, allegedly misleading SEC filings; "The test for typicality is whether the class representatives' *claims* are typical, not whether the class representatives are typical.")).

Such an analysis is particularly appropriate where defendants make the alleged misrepresentations on a plan-wide basis. *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 353 (N.D. Ill. 2007) (rejecting an argument for individual proof of reliance on a § 502(a)(2)

communications claim, noting that the alleged misrepresentations occurred through "town hall" meetings, blast e-mail updates, and newsletters). Here, Jones does not allege that Defendants failed to disclose and misrepresented the health of NovaStar through personal communications to Plan participants; she alleges that they did so on a Plan-wide basis in fora such as Plan documents, annual reports, press releases, and public filings.

Defendants' actions towards the Plan, not individual Plan participants, are relevant to Jones's communications claims. For purposes of class certification, what Jones individually "knew, and when, regarding the allegations of non-disclosure and concealment, does not defeat typicality." *Spano* , 2008 WL 4449516, at *6.[6] Jones's claims are sufficiently typical of those of the class.

### 4. Adequacy

Defendants also dispute Jones's argument that she "will fairly and adequately protect the interest of the class." *See* Fed. R. Civ. P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the members

---

[6] Defendants rely on *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 676 (8th Cir. 1999), to support their argument. *Ince* concerned "the manner in which a health maintenance organization asserted subrogation claims for health benefits provided to members who later recovered from third-party tortfeasors." *Id.* at 672. Affirming summary judgment on whether the alleged fiduciaries breached the terms of the plan, the *Ince* court found no authority for the proposition that ERISA fiduciary duties extended to such communications, and noted that the plaintiffs had no evidence of materiality, detrimental reliance, or damage. *Id.* at 677. *Ince* does not address whether individual reliance issues defeat class certification in § 502(a)(2) cases alleging a plan's reliance on plan-wide communications.

of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

### a.    Differences in Claims/Interests

Defendants rely on the differences between Jones's claims and those of other class members in arguing that she is not an adequate class representative.  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class" which "they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Defendants argue that, unlike other class members who purchased and held NovaStar common stock while the price plummeted, Jones may well have profited from her ultimate sale of the stock.  They repeat their distinction between purchaser and holder claims, contending that Jones has no interest in pursuing purchaser claims. Defendants also repeat that Jones's holder claim will be more difficult to prove than that of class members who held onto their stock longer.  As they did in arguing that Jones' claims are atypical, Defendants contend that Jones will have to show that NovaStar common stock became an imprudent investment on a date different, and less optimal, than that upon which other class members will rely.

There is no indication that Jones's interests are antagonistic to those of the class. *See Paxton*, 688 F.2d at 563.  For the same reasons the Court rejected Defendants' same arguments with regard to typicality, the Court rejects them as to adequacy.  Again, in an

action seeking to recover on behalf of a plan, the focus is on the impact of the defendants' actions on that plan. Indeed, Jones has an incentive to maximize recovery to the Plan because she will be affected. *See Kanawi*, 254 F.R.D. at 111. The differences between Jones's personal claims and those of other class members are outweighed by their common interests in establishing that Defendants are liable to the Plan.

### b. Understanding the Role of Class Representative

Defendants cite to Jones's deposition testimony as evidence that she will not vigorously prosecute the interests of the class: Defendants argue that Jones does not appropriately understand her suit or the role of a class representative. Class representatives need not have special understanding of the factual or legal issues in their cases. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, it is "not surprising that [Jones] cannot articulate the nature of [her] claims since ERISA is a complicated area of the law." *See George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 351 (N.D. Ill. 2008) (citation omitted) (noting that plaintiffs' burden of establishing adequacy is "not great" and certifying a class where the named plaintiffs were found through a newspaper ad); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966) (disproving of attacks to class representatives' adequacy based on ignorance) (cited in *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 62 (2d Cir. 2000) (finding that a minimally knowledgeable class representative could proceed with a class action)). Defendants do not dispute that Jones has retained class counsel with significant

Case 4:08-cv-00490-NKL   Document 60   Filed 04/06/09   Page 22 of 29

experience in federal class actions, including those brought under ERISA. She has

vigorously litigated her claims on behalf of the putative class to date. It appears that

Jones will fairly and adequately protect the interests of the class.

### B. Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a case must also meet the

requirements of one of the subdivisions of Rule 23(b) in order to proceed as a class

action. Jones argues that her claims may be appropriately certified under Rule 23(b)(1)

or, alternatively, Rules (b)(2) or (b)(3).

#### 1. Rule 23(b)(1)

Rule 23(b)(1) allows certification where:

> (1) the prosecution of separate actions by or against individual members of the
> class would create a risk of
>> (A) inconsistent or varying adjudications with respect to individual
>> members of the class which would establish incompatible standards of
>> conduct for the party opposing the class, or
>> (B) adjudications with respect to individual members of the class which
>> would as a practical matter be dispositive of the interests of the other
>> members not parties to the adjudications or substantially impair or impede
>> their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Subsection A attempts to avoid possible prejudice to

Defendants, while subsection B attempts to avoid possible prejudice to class members.

*See In re Ikon*, 191 F.R.D. at 466. Because Rule 23(b)(1) does not provide opt-out

protections, the Rule is interpreted narrowly. *See Ortiz v. Fibreboard Corp.*, 527 U.S.

Case 4:08-cv-00490-NKL   Document 60   Filed 04/06/09   Page 23 of 29

815, 833 n.13, 842 (1999).  While notice to the class is not mandatory, it is within courts' discretion to order notice.  *See* Fed. R. Civ. P. 23(c)(2)(A).

### a.      Rule 23(b)(1)(B)

Jones argues first for certification under Rule 23(b)(1)(B), which addresses potential prejudice to class members.   The Advisory Committee Notes to Rule 23(b)(1)(B) provide:

> [Rule 23 (b)(1)(B)] takes in situations where the judgment in a non-class action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit . . .  [This] reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.

Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Notes (1966 Amendment).

To qualify as a class action under Rule 23(b)(1)(B), it must be shown that "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members."  *Ortiz*, 527 U.S. at 834.   Several courts have certified classes alleging breaches of ERISA fiduciary duties under Rule 23(b)(1)(B).  *See In re Merck*, 2009 WL 331426 at *10 (certifying §§ 502(a)(2) and (3) claims under 23(b)(1)(B) as well as 23(b)(1)(A), noting that courts are empowered to provide relief by removing fiduciaries, which would be – in cases proceeding individually – dispositive of non-party

24

plan participants' interests); *In re Williams Co. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D.

Okla. 2005) ("due to ERISA's distinctive 'representative capacity' and remedial

provisions, class treatment under Rule 23(b)(1)(B) is appropriate in this case"); *In re

Ikon*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) ("given the nature of an ERISA claim which

authorizes plan-wide relief, there is a risk that failure to certify the class would leave

future plaintiffs without relief"). Given that Jones's claim seeks "Plan-wide relief, there

is a risk that failure to certify the class would leave future plaintiffs without relief." *See

Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008);

*George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 352 (N.D. Ill. 2008) (finding that

adjudication of the claims of a plaintiff representing the interests of a plan would be

dispositive of the interests of plan participants as a practical matter). Certification under

Rule 23(b)(1)(B) is appropriate.

### b.      Rule 23(b)(1)(A)

Jones also seeks certification under Rule 23(b)(1)(A), which addresses potential

prejudice to Defendants. Defendant argues that Rule 23(b)(1)(A) is not available where

a plaintiff seeks monetary relief. Though certain Ninth Circuit case law suggests this

argument, *see McDonnell Douglas Corp. v. United States Dist. Court for Cent. Dist.*,

523 F.2d 1083, 1086 (9th Cir. 1975), the argument:

> inserts a requirement into 23(b)(1)(A) that is not present. This subsection requires
> that the varying adjudications "would establish incompatible standards of conduct
> for the party opposing the class." This language does not require that the varying

25

adjudications would establish incompatible standards as the exclusive or even primary remedy. It only requires that varying adjudications would establish incompatible standards . . . .

*In re Merck*, 2009 WL 331426, at *11 (noting that ERISA stock drop cases have frequently been certified under Rule 23(b)(1)(A)). If one court ordered full restitution to the Plan and removal of the fiduciaries, but another ordered differently, those orders would establish incompatible standards of conduct for Defendants. Rule 23(b)(1)(A) certification is particularly appropriate where a central element of plaintiffs' claims are not an individual matter; here the central questions concerning whether the fiduciaries breached their duties to the Plan are not individual. *See Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341 (11th Cir. 2001) (finding that it was an abuse of discretion to certify an ERISA § 502(a)(2) claim under Rule 23(b)(3) rather than Rule 23(b)(1)(A)).

Arguing against Rule 23(b)(1) certification, Defendants rely on *Langbecker*, 476 F.3d at 318. There were numerous intraclass conflicts in *Langbacker*, where the plaintiffs sought dissolution of a fund whose value had dropped: for example, the fund could not be dissolved and yet remain open for those plaintiffs who wished to continue their investments. *See id.* The *Langbecker* court specifically found that case not appropriate as a "limited fund" Rule 23(b)(1)(B) action. *Id.* "Limited fund cases are but one species of the genus of Rule 23(b)(1)(B) cases." *In re Merck*, 2009 WL 331426 at *10 (citing *Ortiz v. Fibreboard Corp.*,, 527 U.S. 815, 834 (1999)). Jones does not argue that this is a limited fund case and "even if *Langbecker* were controlling authority," its

26

language "would not bar certification under 23(b)(1)(B). *See id.* While the *Langbecker* court reversed the district court's certification of ERISA breach of fiduciary duty claims under Rule 23(b)(2), it did suggest that the district court consider certification under Rule 23(b)(1)(A) as a basis for certification on remand. *Langbecker*, 476 F.3d at 318 (noting that 23(b)(1)(A) case law is unsettled). *Langbecker* does not control this case.

### c. Rule 23(b)(1) Conclusion

"ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Global Crossing Ltd. Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (citation omitted). As one Court explained:

> [Given] the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.... There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether [defendant] had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*In re Ikon*, 191 F.R.D. at 466 (conditionally certifying ERISA §§ 502(a)(2) and (3) claims under Rule 23(b)(1)). Pursuing separate actions would risk inconsistent conclusions concerning liability, remedies, and Defendants' standards of conduct. Class certification is appropriate under both subsections of Rule 23(b)(1). Because a class need only be appropriate under one section of Rule 23(b), the Court does not reach the issue of whether certification would be appropriate under Rules 23(b)(2) or (3).

## II. Notice

The Court recognizes that Rule 23(b)(1) does not require notice to class members. However, Rule 23(c) permits the Court to direct appropriate notice to the class. Fed. R. Civ. P. 23(c)(2)(A). The Court finds that notice costs will not "deter the pursuit of class relief" in this case, where the attorneys have demonstrated a commitment to recovering from Defendants. Particularly, in light of the current economic climate, in which many are worried about the state of their retirement accounts, the Court finds it appropriate to notify class members that their interests are being represented with regard to the claims in this case.

## A.    Rule 23(g)

Rule 23(g) complements the Rule 23(a)(4) requirement of adequate representation by establishing certain requirements for appointing class counsel. Defendants do not contest Jones's argument and supporting declaration that proposed local and class counsel, as required by Rule 23(g): has worked to identify and investigate potential claims; has experience handling other class actions, including those brought under ERISA; has adequate knowledge of the applicable law; has resources adequate for representing the class; and will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g). Jones has satisfied the requirements of Rule 23(g).

## III.    Conclusion

Pursuant to Rule 23(c), the Court certifies the following class under Rule 23(b)(1):

All persons, other than Defendants, who were Participants in or beneficiaries of the NovaStar Financial, Inc. 401(k) (the "Plan") at any time between May 4, 2006 and November 15, 2007, inclusive, and whose accounts included investments in NovaStar common stock.

Notice shall be provided to the class members. The Court appoints Dysart Taylor Lay Cotter & McMonigle, P.C., as local counsel; the Court appoints Gainey & McKenna and Stull, Stull & Brody as class counsel.

It is hereby ORDERED that Jones's Motion to Certify [Doc. # 38] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  April 6, 2009
Jefferson City, Missouri